**Tommy ADKINSON and Belinda Adkinson, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. CV–93–A–1341–S.

United States District Court, M.D. Alabama, Southern Division.

June 22, 1994.

G.A. Lindsey, Elba, AL, for plaintiffs.

Joel W. Ramsey, Dothan, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is now before the court for consideration of Defendant's motion for summary judgment. For the reasons stated below, the court finds that Defendant's motion is due to be denied.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On January 6, 1992, Tommy and Belinda Adkinson (hereinafter sometimes collectively referred to as "Plaintiffs") were injured in Coffee County, Alabama, when their automobile was struck by a vehicle driven by Jeffrey L. Jones. At the time of the accident, Jones was insured by Alfa Mutual Insurance Company ("Alfa") which provided him with liability coverage in the amount of $100,000 per person and $300,000 per accident. Plaintiffs, at the time of the accident, were insured by State Farm Mutual Automobile Insurance Company ("State Farm") which provided them with underinsured motorist ("UIM") coverage.

On November 13, 1992, Plaintiffs filed an action in the Circuit Court of Coffee County, Alabama, against Jones and State Farm to recover money damages for injuries sustained by Plaintiffs in the accident. Thereafter, Plaintiffs settled their claims against Jones. Tommy Adkinson settled his claims against Jones for $75,000 ($25,000 less than the limit of Jones' liability coverage), and Belinda Adkinson settled her claims against Jones for $100,000 (the limit of Jones' liability coverage). In return for the money they received, Plaintiffs executed pro tanto releases of Jones, who was then dismissed from the case, and Alfa. Jones' dismissal from the case created complete diversity of citizenship, and State Farm removed the case to this court based on diversity jurisdiction.

On February 17, 1994, State Farm moved for summary judgment as to Tommy Adkinson's claims only, alleging that he gave up any right to collect UIM benefits from State Farm because he settled his claims against Jones for less than Jones' policy limit. In response, Tommy Adkinson concedes that he settled for less than Jones' policy limit but argues that such settlement does not bar recovery of UIM benefits from State Farm. The court now decides State Farm's motion for summary judgment.

## II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

## III.  DISCUSSION

■ The court finds that Tommy Adkinson did not give up his right to collect UIM benefits from State Farm by settling his claim against Jones for less than Jones' liability policy limit. The court bases this finding on the case *Isler v. Federated Guaranty Mutual Ins. Co.*, 594 So.2d 37 (Ala.1991).

In that case, Paul Isler was injured when the automobile in which he was riding as a passenger collided with an automobile driven by a tortfeasor. The tortfeasor had liability insurance. The automobile in which Isler was riding was owned by his employer and was insured by Reliance Insurance Company ("Reliance") which provided UIM coverage. Additionally, Isler himself was personally insured by Federated Guaranty Mutual Insurance Company ("Federated") which provided him with UIM coverage.

Isler filed suit in state court against the tortfeasor, Reliance, and Federated. Eventually, Isler settled his claims against the tortfeasor for $20,000, the limit of the tortfeasor's liability policy. Isler also settled his claims against Reliance for $35,000. The limit of that policy was $60,000. In return for the settlement money, Isler executed releases of the tortfeasor, the tortfeasor's insurer, and Reliance. That left Federated as the only remaining defendant.

Federated filed a motion for summary judgment, arguing that its UIM coverage was secondary or excess to Reliance's UIM coverage which was primary. Federated went on to argue that since its coverage was secondary and since Isler had settled with Reliance for less than its policy limit, Federated did not have to pay Isler anything under its policy.

The Alabama Supreme Court agreed that Federated's coverage was secondary to Reliance's coverage which was primary, and the court interpreted the Federated policy as follows: "After examining the provisions of [Federated's] policy, we hold that Isler agreed to exhaust his primary coverage before seeking coverage under his Federated policy." *Id.* at 39. The court went on to explain, however, that "to exhaust his primary coverage [first]" did *not* mean that Isler had to recover the maximum payment allowed under the Reliance policy in order to be eligible to recover from Federated under

its UIM clause.[1] Instead, the court explained that "Isler's possible recovery from Federated is limited to an amount in excess of what he is legally entitled to receive under the Reliance policy ($60,000) and from the tortfeasor's insurer ($20,000) or a total of $80,000." *Id.* Thus, the court held that a plaintiff who settles for less than the policy limit of a party that is primarily liable for plaintiff's damages can still recover from a UIM carrier for damages that would not have been paid by the primary insurer even if the plaintiff had recovered the primary insurer's policy limit.

State Farm argues that the *Isler* decision can be distinguished from the present case in two ways. First, State Farm points out that the tortfeasor's carrier in *Isler* paid the plaintiff the policy limit, whereas in the present case, Jones' carrier, Alfa, paid Tommy Adkinson only a portion of the policy limit. This factual distinction is immaterial. No one contends that Alfa in the case at bar is analogous to the tortfeasor's carrier in *Isler*. Instead, Alfa is analogous to Reliance in *Isler*, both carriers having paid their respective plaintiffs less than their respective policy limits. The message of the *Isler* case is that a plaintiff need not collect the policy limit of a primary insurer in order to be entitled to benefits under a UIM policy which is secondary. That message applies perfectly to the case at bar.

The second way in which State Farm tries to distinguish *Isler* from the present case is by citing the following language from the State Farm policy: "There is no coverage until the limits of liability of all bodily injury liability bonds and policies that apply have been used up by payments of judgments or settlements." This language, State Farm argues, requires Adkinson to collect the Alfa policy limit in order to be eligible for UIM benefits under the State Farm policy. The court disagrees.

■ The court finds the term "use[ ] up" in the above-quoted provision of the State Farm policy to have the same meaning as "exhaust" in the *Isler* case.[2] The *Isler* court held that the Federated policy required the plaintiff to "exhaust" or, in State Farm's words, to "use up" the primary coverage before collecting UIM benefits from Federated. As mentioned previously in this opinion, however, the *Isler* court also held that "exhaust" or "use up" does not mean that a plaintiff who settles with a primary insurer for less than the policy limit gives up all right to collect UIM benefits. "Exhaust" or "use up" merely means that the plaintiff can recover UIM benefits only for damages that would not be collected from the primary insurer even if the primary insurer paid the plaintiff the maximum amount allowed under the policy limit. Thus, the court finds that the proffered State Farm policy provision is consistent with the *Isler* decision.

## IV. CONCLUSION

For the reasons stated above, the court finds the *Isler* decision to be controlling in this case. Thus, the court holds that Tommy Adkinson can collect UIM benefits from State Farm to the extent that his damages exceed the limit of Jones' liability coverage

---

**1.** In denying Federated's application for rehearing, the *Isler* court again explained that its use of the word "exhaust" did not mean that Isler had to recover the full amount of the primary policy in order to be eligible to collect UIM benefits from Federated. *Isler,* 594 So.2d at 40.

This court emphasizes that the *Isler* decision is the only Alabama Supreme Court case that explains the meaning of "exhaust" in the UIM context. Several Alabama cases use the word "exhaust" in describing UIM coverage. *See e.g., State Farm Auto. Ins. Co. v. Morris,* 612 So.2d 440, 444 (Ala.1993) ("State Farm was not obligated to pay anything under [the plaintiff insured's] underinsured motorist coverage until the limits of [the tortfeasor's] liability coverage had been exhausted."); *Alabama Insurance Guaranty*

*Ass'n v. Hamm,* 601 So.2d 419, 423 (Ala.1992) ("UIM coverage, by definition, does not duplicate liability coverage but is coverage in excess of liability coverage, and is available to a claimant only after the claimant has exhausted available liability coverages."); *United Services Auto. Ass'n. v. Allen,* 519 So.2d 506, 508 (Ala.1988) ("Plaintiff can recover uninsured motorist benefits from [the insurer] only after the limits of applicable liability policies have been exhausted by payment of judgments or settlements."). *Isler,* however, is the only case that explains the meaning of "exhaust."

**2.** The court bases this finding on common usage. *See, e.g., Webster's Ninth New Collegiate Dictionary* (1991) (first definition listed for the verb "exhaust" is "to consume entirely: USE UP.").

($100,000), until the limit of State Farm's coverage is reached.

The court ORDERS that State Farm's motion for summary judgment is DENIED.