On Application for Rehearing
This court's opinion of June 13, 1997, is withdrawn, and the following substituted therefor.
State Farm Mutual Automobile Insurance Company ("State Farm") appeals from a judgment in favor of Kelly Denise Scott awarding her $50,000 in underinsured motorist ("UIM") insurance benefits. We affirm.
On April 16, 1994, Scott was a passenger in a motor vehicle traveling north on Interstate Highway 20/59 near Bessemer. As Scott slept in the backseat, the intoxicated driver of the automobile attempted to pass a large truck on the right side by traveling at a high rate of speed on the shoulder of the highway; when the vehicle reentered the roadway, the driver lost control and the vehicle went across the highway median, slid across the southbound lanes of the highway, and ultimately came to rest in a drainage ditch on the opposite side of the median, after flipping five times. The impact of the wreck killed one of the three other passengers; Scott suffered several injuries, including three compressed fractures to her vertebrae, and she incurred various associated medical expenses.
Scott, an additional insured under two State Farm policies held by her father, sued the driver of the vehicle, alleging that he had "operated his vehicle in a wanton manner with reckless disregard for the safety of others."[1] *Page 240 
Later, Scott added a claim against State Farm for UIM benefits "to the extent of the policy limits" of the two State Farm policies. Scott settled pro tanto her claims against the driver and his liability insurance carrier in exchange for a payment of $77,500, which was $20,000 less than the amount of coverage potentially available to her under the policy.[2]
State Farm moved for a summary judgment, contending that under the provisions of its policies, Scott's acceptance of less than the available limits of the driver's liability coverage defeated her right to claim UIM benefits from State Farm. In pertinent part, the UIM section of both of State Farm's policies contains the following condition of coverage:
 "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENTS OF JUDGMENTS OR SETTLEMENTS."
Both parties submitted briefs on the issue whether the above-quoted provision of the two State Farm policies precluded Scott's claim for UIM benefits. The trial court denied State Farm's motion for summary judgment and set the case for trial before a jury.
At trial, State Farm sought to introduce a copy of Scott's policy form that included the above-quoted clause. State Farm also sought to make the jury aware of the fact of, and the amount of, the settlement between Scott and the driver's insurance carrier. The trial court refused to admit the policy form into evidence and refused to admit any evidence concerning the amount of the settlement with the driver. The trial court also, at the close of Scott's evidence and at the close of all the evidence, denied State Farm's motions for directed verdict, which were based on the same grounds as its summary judgment motion. The jury assessed Scott's total damages at $159,500 and returned a general verdict against State Farm and in favor of Scott for $62,000. State Farm's motions for judgment notwithstanding the verdict and for a new trial were denied to the extent that they claimed error in regard to the exhaustion-of-coverage issue and the exclusion-of-evidence issue. However, the trial court did reduce the jury's award to $50,000, based upon the parties' stipulation that that amount represented the aggregate UIM coverage limits of the two State Farm policies. State Farm appeals from the resulting judgment.
The primary issue raised by State Farm is whether an insurer, through the use of a contractual restriction in a policy of automobile insurance, may validly condition payment of underinsured motorist insurance benefits upon exhaustion of other liability insurance. If this question is answered "yes," then the trial court erred in denying State Farm's motions for a summary judgment, a directed verdict, and a judgment notwithstanding the verdict, all raising that issue. To answer this question, we must consider the nature of UIM coverage.
Section 32-7-23(a), Ala. Code 1975, provides:
 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto . . . under provisions approved by the commissioner of insurance for the protection of persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. . . ."
In Alabama, UIM coverage is actually a subset of theuninsured motorist ("UM") coverage *Page 241 
statutorily mandated[3] by § 32-7-23, as the following description of its derivation makes clear:
 "Uninsured motorist coverage is a statutory creature of relatively recent origin, having been enacted in 1965 and become effective in 1966. The purpose of the statute as originally enacted was to 'provide financial recompense to innocent persons who are injured and to dependents of those who are killed because of the wrongful conduct of uninsured motorists.'
 "The statute, both as originally enacted and recently amended, provides that no automobile liability policy shall be issued without uninsured motorist coverage unless the insured rejects such coverage in writing.
 "In 1984, the Alabama Legislature amended the Motor Vehicle Safety-Responsibility Act and created underinsured motorist coverage, effective January 1, 1985. There is no mention of the word 'underinsured' in § 6 of Act No. 84-301 of the Acts of the 1984 Legislature. The legislature created this new coverage simply by amending the definition of 'uninsured motor vehicle' to include motor vehicles with respect to which '(4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.'
 "As the Alabama Supreme Court stated in a footnote in Lowe v. Nationwide Ins. Co.
[521 So.2d 1309, 1309 n. 1 (Ala. 1988)], 'as statutorily defined, "uninsured motorist" includes "under
insured" motorist.'
". . . .
 "Because of the very limited nature of the statutory enactment of underinsured motorist coverage, the courts, insurance companies and lawyers have been left with many unresolved questions."
Ronald G. Davenport, Alabama Automobile Insurance Law, § 21-1 (2d ed. 1996) (footnotes omitted). We now must answer one of these "many unresolved questions."
Several opinions of this court and of our supreme court have established that § 32-7-23 is a mandatory statute. This court held in Insurance Co. of North America v. Thomas, 337 So.2d 365
(Ala.Civ.App. 1976), that "if the statutory conditions are present, the courts will infer the existence of minimum uninsured motorist coverage notwithstanding the absence of aprovision for such coverage in the insurance policy itself." 337 So.2d at 368 (emphasis added). Our supreme court indicated its agreement with this assessment of the effect of § 32-7-23
in Ex parte Potete, 409 So.2d 429, 429 (Ala. 1981), citingThomas with approval. Indeed, it has, arguably, gone further, stating that § 32-7-23 becomes part of every policy as an implied term just as if it were written out in the policy itself: "[I]t is mandatory that [§ 32-7-23], the governing law[,] be read into the policy contract as it exists. Where the inclusion of uninsured motorist coverage is mandatory under an act, unless specifically waived, the governing act states what the coverage shall include." State Farm Auto. Ins. Co. v.Baldwin, 470 So.2d 1230, 1232 (Ala. 1985) (quoting Higgins v.Nationwide Mut. Ins. Co., 291 Ala. 462, 465, 282 So.2d 301, 303
(1973)).
A necessary corollary to the principle that § 32-7-23 is a mandatory provision is that an insurer will not be permitted to deny the benefits provided for in § 32-7-23 "by inserting provisions restricting an insured's right to recovery." Bibb Allen, Alabama Liability Insurance Handbook, § 21-6 (1996). Among the cases cited by the Handbook as adopting this position are State Farm Auto. Ins. Co. v. Reaves, 292 Ala. 218, 223,292 So.2d 95, 99 (1974) (policy exclusion of vehicle not described in declarations held void); Higgins, supra,291 Ala. at 466, 282 So.2d at 305 (exclusion of vehicles owned by governmental entities from definition of "uninsured automobile" held void); and St. Paul Ins. Co. v. Henson, 479 So.2d 1253,1253-54 (Ala.Civ.App. 1985) (exclusion of coverage for insured while occupying motor vehicle owned by insured but not covered under *Page 242 
liability portion of policy held void). Also in this category of cases is Star Freight, Inc. v. Sheffield, 587 So.2d 946, 958
(Ala. 1991) (holding policy provision and provision of release and trust agreement expanding UM insurer's right to subrogation as to recovery received from tortfeasor void because contrary to § 32-7-23). The rule of these decisions may thus be summarized as follows: "where an exclusion in a policy is more restrictive than the uninsured motorist statute, it is void and unenforceable." Watts v. Preferred Risk Mut. Ins. Co.,423 So.2d 171, 175 (Ala. 1982) (citing Alabama Farm Bureau Mut. Cas.Ins. Co. v. Mitchell, 373 So.2d 1129 (Ala.Civ.App. 1979)).
The State Farm policies in this case exclude both UM and UIM coverage until the limits of liability of all other liability policies or bonds have been used up "by payments of judgments or settlements" (emphasis added); thus, they place a condition upon the existence of UIM coverage based upon the collection of all other liability policies or bonds that afford coverage for a particular wreck. However, § 32-7-23(b)(4) defines "uninsured motor vehicle" so as to include "motor vehicles with respect to which . . . [t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available
to an injured person after an accident is less than the damages which the injured person is legally entitled to recover" (emphasis added). As stated previously, § 32-7-23(a) contains an absolute requirement that UM (and, therefore, UIM) coverage be afforded as an incident to the extension of liability coverage; the sole condition in § 32-7-23 placed upon the availability of UIM coverage and not placed upon UM coverage is that the tortfeasor's available coverage be less than the amount of damages the injured person has a right to recover. Thus, the § 32-7-23(a) mandate of coverage, when read with the § 32-7-23(b)(4) concept of "underinsured," is inconsistent with an automobile liability insurer's conditioning UIM coverage upon the receipt of payments from another liability carrier pursuant to a judgment or a settlement — the insurer must provide coverage above other available liability limits, whether collected or not. As a result, the pertinent provision of State Farm's policies contravenes § 32-7-23 and is therefore void.
This is not to say that an insurer's UIM liability is unbounded. Under § 32-7-23(a), the parties to a UM/UIM policy may elect any monetary limit of coverage that meets or exceeds the limits set forth in Ala. Code 1975, § 32-7-6(c) (i.e., $20,000 per person and $40,000 per accident). Moreover, as the trial court recognized in requiring the jury in assessing Scott's damages to subtract $97,500 (representing the driver's policy limits), § 32-7-23 does not mandate that an insurer such as State Farm pay any portion of its insured's damages that fall within the available limits of another liability policy. Indeed, an injured person electing to accept from a tortfeasor's insurer an amount less than the limits of coverage under the tortfeasor's liability policy will necessarily forgo any right provided by § 32-7-23[4] to collect the shortfall from his or her UIM insurance carrier, as Scott did in this case by waiving her claim to an additional $20,000 from the driver's insurance carrier. We merely hold, as Alabama courts have often held, that a policy provision such as that clause relied upon by State Farm, which conditions or restricts UM or UIM coverage in a manner not permitted under § 32-7-23, is void and unenforceable.
This result is consistent with the only other reported decision we have found construing the requirements of § 32-7-23
in this setting. In Adkinson v. State Farm Mut. Auto. Ins. Co.,856 F. Supp. 637 (M.D.Ala. 1994), a federal district court, applying Alabama law, considered whether an injured motorist's acceptance of $25,000 less than the limits of the tortfeasor's liability insurance coverage prevented him, as a matter of law, from recovering UIM benefits. Notably, State Farm was the defendant in Adkinson, and the federal court considered the effect of *Page 243 
precisely the same clause relied upon by State Farm in this case. The Adkinson court concluded that the motorist "did not give up his right to collect UIM benefits from State Farm by settling his claim against [the tortfeasor] for less than [the tortfeasor]'s liability policy limit." 856 F. Supp. at 639.
In reaching its conclusion, the Adkinson court placed great reliance upon our supreme court's decision in Isler v.Federated Guar. Mut. Ins. Co., 594 So.2d 37 (Ala. 1991). Isler
involved an employee-passenger who was involved in a two-car collision. The employee sued his employer's automobile liability insurance carrier, his personal UIM insurance carrier, and the driver of the other vehicle. The employer's insurance carrier settled the employee's claims against it for $35,000, which was $25,000 less than the $60,000 total coverage applicable under the circumstances, and the employee's UIM carrier asserted that under the "excess clause" of its policy, it owed no benefits under its policy. The Isler court disagreed, holding that the employee could recover from his UIM carrier any damages in excess of the $80,000 available to him
under the two primary liability policies. Thus, while Isler
actually involves the operation of an excess clause in a UIM policy, rather than the operation of § 32-7-23 itself, it does provide authority for the proposition that in the absence of binding contractual provisions to the contrary, the mere acceptance of less than full recovery from primary insurance will not defeat one's right to recover from a secondary carrier those damages that exceed the amounts covered by primary insurance.[5] Because § 32-7-23(b)(4) uses the concept ofavailability of primary insurance rather than actual collection
thereof, and renders contrary contract language unenforceable, we deem both Isler and Adkinson to be persuasive authority for the conclusions reached in this opinion.[6]
State Farm principally relies upon State Farm Auto. Ins. Co.v. Morris, 612 So.2d 440 (Ala. 1993), for its contention that it had no duty to pay UIM benefits to Scott until the driver's liability insurance actually paid Scott its coverage limits.Morris involved a judgment against a UIM insurance carrier on an outrage claim based upon an allegedly unreasonable delay in settling a claim; our supreme court stated, as one of several reasons for reversing the judgment, that "State Farm was doing no more than insisting upon its legal rights in a permissible way."[7] In support of this conclusion, the Morris court quoted the same policy language that is relied upon by State Farm in this case, and posited that the plaintiff was not entitled to recover UIM benefits until the limits of applicable liability policies were exhausted. 612 So.2d at 444 (citing United Servs.Auto. Ass'n v. Allen, 519 So.2d 506, 508 (Ala. 1988)). However, there is no indication that the parties in either Morris orAllen addressed the issue raised by Scott in this case, i.e., whether § 32-7-23 requires a UIM insurer to pay damages exceeding the amounts covered by other liability insurance policies regardless of whether those amounts are paid to the injured party. Thus, while Morris (an outrage case) and Allen
(an injunction case) may have tangentially considered the policy language relied upon by State Farm here, we do not believe that either of these opinions is authoritative on the particular issue raised by the parties in this case.
Based upon the foregoing analysis, we conclude that Scott was not barred from collecting any UIM insurance benefits from State *Page 244 
Farm simply because she accepted a settlement that did not equal the driver's liability insurance limits of coverage. Thus, the trial court properly denied State Farm's motions for a summary judgment, a directed verdict, and a judgment notwithstanding the verdict.
State Farm's two other issues may be addressed summarily. First, State Farm contends that the trial court should have permitted introduction of the terms and conditions of its form policy, arguing that they were relevant and admissible. The State Farm form contained the very condition precedent to UIM coverage that this court concludes in this case is unenforceable to the extent that the insured party seeks to recover damages in excess of all available liability coverage. State Farm argues that the trial courts' exclusion of the policy "stripped State Farm of its primary defense," that of proof of compliance with the conditions precedent to coverage.
"A trial court has great discretion in determining the admissibility of evidence, and its rulings will not be reversed on appeal absent an abuse of discretion. . . . Further, the appellant must establish that the error was prejudicial before the trial court's judgment will be reversed on that basis."Grayson v. Dungan, 628 So.2d 445, 447 (Ala. 1993). Here, the parties stipulated to the existence of both the policy and Scott's UIM insurance coverage thereunder, and the jury was instructed to that effect, without objection from State Farm. Moreover, State Farm has directed this court's attention to no term or "condition precedent" in the policy form that Scott failed to satisfy other than the void "used up by payment" condition. Under these circumstances, we conclude that the trial court's exclusion of the actual State Farm policy was not prejudicial to State Farm. See Ala.R.App.P. 45.
Finally, citing Tatum v. Schering Corp., 523 So.2d 1042
(Ala. 1988), and Bucyrus-Erie Co. v. Von Haden, 416 So.2d 699
(Ala. 1982), State Farm contends that the jury should have been made aware of the amount of the pro tanto settlement between Scott and the driver. Here again, State Farm repeats its contention that informing the jury of the $77,500 settlement would have furthered its defense that Scott had not fulfilled all of the conditions precedent to coverage by receiving amounts from the driver's liability insurance carrier representing less than all of the carrier's policy limits.
However, neither Tatum nor Bucyrus-Erie is applicable to the facts of this case. The pertinent portion of our supreme court's opinion in Bucyrus-Erie (which appears verbatim inTatum) states:
 "It is well settled that a person injured by joint tort-feasors may release one or more pro tanto and proceed against the others. The tort-feasors may plead the release as a bar to that amount paid by the released tort-feasor or may place it in evidence showing payment for the injury up to the amount shown in the release. . . . In lieu of allowing defendant to place the pro tanto
settlements into evidence, the trial court properly informed the jury of the total amount of the settlements and instructed them to subtract that figure . . . from the full amount of damages, if any, sustained by plaintiff."
416 So.2d at 702 (emphasis added; citations omitted). Here, State Farm is not a joint tortfeasor; its obligation to pay Scott arises from a contractual duty of indemnity (albeit a statutorily mandated one) and not from a legal duty to pay damages in tort, and the two sources of payment to Scott are wholly different. Cf. State Farm Mut. Auto. Ins. Co. v. Cahoon,287 Ala. 462, 468-69, 252 So.2d 619, 623-24 (1971) (holding UM benefits outside reach of statute mandating reimbursement, from judgment or settlement received from third party tortfeasor, of worker's compensation benefits received from employer). Moreover, the trial court in effect complied with the principles set forth in Bucyrus-Erie in instructing the jury that it should subtract $97,500 from Scott's damages in rendering its verdict, an amount which includes not only the $77,500 pro tanto settlement but also the additional $20,000 that would have been available to her under the driver's liability insurance. We therefore conclude that the trial court's exclusion of evidence that Scott received *Page 245 
$77,500 from the driver's liability insurance carrier was not an abuse of its discretion.
Based upon the foregoing facts and authorities, we conclude that the judgment of the trial court is correct. Therefore, we affirm.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] Scott did not make a negligence claim because of the operation of Alabama's guest statute, Ala. Code 1975, § 32-1-2, which limits the liability of motor vehicle operators to their guests to situations involving willful or wanton conduct.
[2] The driver's liability insurance coverage was subject to a $300,000 per accident limit, and at the time of Scott's settlement all but $97,500 of that amount had been expended in settlement of the claims of the other passengers in the vehicle.
[3] Section 32-7-23(a) allows the named insured under an automobile liability or motor vehicle liability policy of insurance to reject UM coverage; however, it is not contended in this case that Scott's father rejected UM coverage.
[4] We emphasize that § 32-7-23 provides a floor and not a ceiling with respect to UM and UIM coverage, and we are not called upon in this case to decide whether, or under what circumstances, an insurance company may voluntarily provide coverage for amounts not paid by a tortfeasor's insurance carrier.
[5] We note our supreme court's observation in Alabama Ins. Guar.Ass'n v. Hamm, 601 So.2d 419, 423 (Ala. 1992), that "UIM coverage . . . is coverage in excess of liability coverage" (emphasis added).
[6] While this fact is not necessary to our analysis, we note that the vast majority of courts considering the question we address today have adopted the view we adopt today, i.e., that acceptance of less than the policy limits of primary liability insurance does not defeat the right of an injured person to recover any damages in excess of those limits. See, e.g., Cobbv. Benjamin, 325 S.C. 573, 586, 482 S.E.2d 589, 595-96
(Ct.App. 1997) (adopting majority view while noting split of authority, and collecting cases).
[7] Our supreme court has espoused the view that an outrage defendant "is never liable . . . where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." Morris, 612 So.2d at 444 (quoting Restatement (Second) of Torts § 46 comment g (1977)).