On March 17, 1995, Jimmy D. Kelley, a passenger in his uncle's motor vehicle, was injured when that vehicle was involved in a collision with a vehicle operated by Stephanie D. Lewis; Ms. Lewis was insured by Alfa Insurance Company ("Alfa") for up to $25,000 with respect to the collision. Kelley later sued Lewis; Rhonda Thompson (who Kelley alleges to be Lewis's employer or a joint venturer with Lewis); Cotton States Insurance Company, Inc. ("Cotton States"), his uncle's uninsured/ underinsured-motorist-insurance carrier; and Illinois National Insurance Company ("Illinois National"), his own uninsured/ underinsured-motorist-insurance carrier. Illinois National filed a motion to "opt out"[1] of further participation in the case, asserting that it was "willing to be bound by any judgment rendered . . . in favor of Jimmy D. Kelley for any amount over and above the combined policy limits of Alfa . . .and Cotton States" (emphasis added). However, before the case was tried, Kelley stipulated to the dismissal of his claims against Lewis and Thompson, and Alfa paid Kelley $22,000 in settlement of those claims. Kelley also stipulated to the dismissal of his claims against Cotton States for a payment of $13,000, which was $7,000 less than its policy limits with respect to the collision in which Kelley was injured. Thus, Kelley received $35,000 out of a total of $45,000 in potentially available insurance coverage from Alfa and Cotton States.
The trial court then held an ore tenus proceeding concerning the extent of Illinois National's liability with respect to Kelley's damages; although Illinois National conceded Lewis's liability to Kelley, it contended that it owed no insurance benefits to Kelley. After hearing testimony from Kelley and receiving various exhibits into evidence, the trial court found that Kelley had incurred damage or loss of $45,000. The trial court entered a judgment in favor of Kelley and against Illinois National for $10,000, deducting from the $45,000 the $35,000 in payments Kelley had previously received from Alfa and Cotton States. In doing so, the trial court specifically noted that "[n]o policy terms restricting the amount of recovery nor requiring [a setoff had been] introduced into evidence."
Kelley filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P., seeking an amended judgment assessing his damages at $55,000, rather than $45,000. Illinois National filed a similar motion seeking a setoff of the entire damages calculation of $45,000 because the limits of the Alfa and Cotton States policies had not been exhausted; it filed a copy of its insurance policy (which contained an "excess" clause) in support of its motion. The trial court, after a hearing, declined to alter or amend its judgment, and Illinois National appealed, contending that the judgment against it was erroneous. Kelley has not favored this court with an appellate brief.
We first consider whether the trial court erred in failing to consider the language of the Illinois National policy, which was presented to the trial court for the first time as an attachment to Illinois National's Rule 59(e) motion. In Ex parteJohnson, 673 So.2d 410 (Ala. 1994), our Supreme Court expressly stated that although additional evidence may be submitted in support of a motion under Rule 59(e), "it is subject to being excluded by the trial court upon timely objection." 673 So.2d at 412. Kelley lodged a timely objection *Page 1285 
to the trial court's consideration of the Illinois National policy, and, based upon that objection, the trial court declined to consider the language contained in Illinois National's policy in determining whether it was entitled to avoid liability. In light of Johnson, the trial court did not err in excluding the belatedly submitted policy from its consideration of the correctness of its judgment.
Because we conclude that the trial court did not abuse its discretion in excluding the Illinois National policy, we must determine whether, as Illinois National contends, the trial court's judgment should be reversed without regard to the language of the policy.
Illinois National contends, among other things, that it was entitled to set off the entire amount of damage ($45,000) that the trial court determined that Kelley had incurred as a result of the collision because, it says, that amount was "available" to Kelley pursuant to § 32-7-23(b)(4), Ala. Code 1975. That statute defines the term "uninsured motor vehicle" so as to include motor vehicles with respect to which "[t]he sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover." The effect of § 32-7-23(b)(4) is to require insurers to offer underinsured-motorist insurance that will indemnify persons injured as a result of the use of an automobile when the person or persons legally responsible for the injury have some insurance coverage, but not enough to make the injured person whole. Seegenerally Guess v. Allstate Ins. Co., 717 So.2d 389, 390
(Ala.Civ.App. 1998) (noting origin and purpose of "underinsured" coverage).
As to $25,000 of Kelley's $45,000 in damage or loss, which represents the limits of liability insurance available to Kelley under Lewis's policy of insurance issued by Alfa, we agree with Illinois National based upon our opinion in State Farm MutualAutomobile Insurance Co. v. Scott, 707 So.2d 238 (Ala.Civ.App. 1997), in which we construed § 32-7-23(b)(4) to bar an injured person from recovering benefits from an underinsured-motorist-insurance carrier that are within the "available" limits of automobile liability insurance policies, rather than as allowing recovery above and beyond moneyscollected from liability carriers. Under § 32-7-23(b)(4), coverage under a liability insurance policy is "primary" up to that policy's monetary limits, with underinsured-motorist-insurance coverage being "secondary" to that coverage. Therefore, the trial court should have set off $25,000, Alfa's policy limits, rather than $22,000, the amount it actually paid to Kelley, before determining any underinsured-motorist-insurance liabilities.
However, we cannot agree with Illinois National that §32-7-23(b)(4), as construed in Scott, required the set-off of the entire $20,000 in underinsured-motorist-insurance coverage available to Kelley under the Cotton States policy. Because Lewis carried only $25,000 in bodily injury liability insurance coverage, and the damages Kelley would have been entitled to were calculated at $45,000, Lewis was an "uninsured motorist" as to Kelley, under the explicit language of § 32-7-23(b)(4), this fact triggering Kelley's underinsured-motorist-insurance coverages. Under the evidence presented at trial, both Cotton States and Illinois National afforded underinsured-motorist coverage to Kelley. The underinsured-motorist insurance owed by Cotton States under its policy issued to Kelley's uncle did not arise from "bodily injury liability bonds and insurance policies," as that term is used in § 32-7-23(b)(4), but amounted to a source of underinsured-motorist-insurance benefits that was secondary to the Alfa liability coverage, not co-primary with that coverage. Thus, the Cotton States insurance was not subject to the rule inScott requiring exhaustion of available liability limits *Page 1286 
before resort to underinsured-motorist-insurance coverage.
Illinois National, however, contends that under general principles of Alabama insurance law, underinsured-motorist-insurance coverage provided in a policy insuring the vehicle in which the injured party was traveling is, as a matter of law, primary with respect to other underinsured-motorist-insurance coverage inuring to the benefit of an injured party. In making that contention, Illinois National cites, among other cases, Long v. United States Fidelity Guaranty Co., 396 F. Supp. 966 (N.D.Ala. 1975). In Long, the federal district court concluded that under Alabama law, with respect to one who is insured by two uninsured-motorist insurance carriers, coverage inuring to the insured as a result of his or her occupancy of a particular non-owned vehicle is primary, whereas other uninsured-motorist insurance coverage would be secondary. Long is consistent with our decisions in Almeida v.State Farm Mutual Insurance Co., 53 Ala. App. 175, 298 So.2d 260
(Civ. App. 1974), and Barnwell v. Allstate Insurance Co., 55 Ala. App. 447,316 So.2d 696 (Civ. App. 1975), which had construed the particular policy provisions involved in those cases so as to render the vehicle's coverage primary. See also 1 Alan I. Widiss,Uninsured Underinsured Motorist Insurance, § 13.7 (Rev. 2d ed. 1999) (noting that several decisions have held that "when a person is injured as an occupant, the uninsured motorist coverage applicable to that person as a passenger is primary, and must be exhausted before such an insured may seek indemnification under his or her own uninsured motorist coverage.").
Applying the holding of Long to the facts of this case, we conclude that the Cotton States coverage, which was applicable to the vehicle in which Kelley was a passenger, was primary, and the coverage of Illinois National (under whose policy Kelley was a named insured) was secondary; thus, only after the liability limits of the Cotton States policy were exhausted would Illinois National's duty to pay ripen. Therefore, we conclude that despite its failure to introduce its policy into evidence, Illinois National was entitled to a set-off of the entire $20,000 of underinsured-motorist-insurance coverage that Kelley had available under the Cotton States policy insuring the vehicle in which he was injured because the Illinois National coverage would have been, as a matter of law, excess coverage over and above the Cotton States coverage. When aggregated with the $25,000 Alfa liability-policy limits available under § 32-7-23(b)(4), as interpreted in Scott, the Cotton States limits would have precisely equaled the amount of damages that the trial court determined Kelley to be entitled to recover from Lewis, leaving nothing for Illinois National to pay. As a result, the trial court erred in directing Illinois National to pay $10,000 to Kelley.[2]
Based upon the foregoing facts and authorities, we reverse the trial court's judgment in favor of Kelley and against Illinois National and remand the cause for the trial court to enter a judgment in favor of Illinois National.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
[1] See generally Lowe v. Nationwide Insurance Co.,521 So.2d 1309 (Ala. 1988), which recognized the practice of "opting out" by uninsured-motorist insurers.
[2] We therefore do not reach the issue whether Kelley was required to submit the policy into evidence as a prerequisite to recovering against Illinois National. *Page 1287