THOMAS, Judge.
 

 On October 15, 2006, Mildred Kyle was a passenger in an automobile driven by her husband, Jerry Kyle. The Kyles’ daughter and grandson, Jennifer Kyle and Jace Kyle, and Jasmine Braswell, a family friend, were also passengers in the Kyle automobile. An automobile driven by Carl Howard collided with the Kyle automobile.
 

 All the occupants of the Kyle automobile were injured to varying degrees, with Mildred Kyle being injured the most severely with a broken clavicle. Mildred’s medical expenses totaled $6,383. Jennifer’s medical expenses were $5,607.15. Jerry’s medical expenses were $1,237.60. Jace and Braswell had medical expenses totaling $1,155.50 and $1,600.75, respectively. Jerry also lost $354.45 in wages as a result of the accident.
 

 Howard was at fault for the accident. He was insured by AIG National Insurance Company (“AIG”); his liability policy limits were $25,000 per person and $50,000 per occurrence. AIG offered the policy limits of $50,000 per occurrence in settlement of the claims of the five occupants of the Kyle automobile.
 

 Progressive Specialty Insurance Company (“Progressive”) had issued an automobile-insurance policy to Jerry Kyle. That policy provided uninsured/underinsured-motorist (“UM/UIM”) insurance in the amount of $50,000 per person. The policy contained the following provisions regarding underinsured-motorist (“UIM”) benefits:
 

 “The damages that an insured person is legally entitled to recover because of bodily injury under [the UM/UIM provisions of the policy] will be reduced by:
 

 “1. All sums paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible including, but not limited to, all sums paid under Part I-Liability To Others, and;
 

 “2. Any difference between the sums paid by the insurers of the persons or organizations who may be legally responsible and the limits of liability under those bonds and policies.”
 

 On August 22, 2007, the attorney for the Kyles and Braswell notified Progressive that AIG was offering the $50,000 per-occurrence policy limits in settlement of the claims of the five occupants of the Kyle automobile. He enclosed documentation regarding the injuries of each occupant. The attorney for the Kyles and Braswell further requested from Progressive information regarding possible UIM coverage for the accident. By letter dated September 13, 2007, Tina Thrasher, a Progressive claim adjuster, informed the attorney for the Kyles and Braswell that Progressive was waiving its subrogation rights.
 

 The Kyles and Braswell settled with AIG for the $50,000 per-occurrence policy limits of Howard’s policy. The settlement proceeds were divided between the five occupants of the Kyle automobile as follows: Jerry received $15,000, Mildred received $7,500, Jennifer received $7,500, Jace received $10,000, and Braswell received $10,000. The settlements received by Jace and Braswell, because they were minors, were court-approved pro tanto settlements. Jerry, Mildred, and Jennifer then made claims for UIM benefits under Jerry’s policy.
 

 Progressive and Mildred agreed that her damages amounted to $40,000. Although Progressive never agreed upon the amount of damages incurred by Jerry and Jennifer, Progressive settled their claims for UIM benefits for $1,000 and $14,000,
 
 *567
 
 respectively. Progressive refused to settle Mildred’s claim for UIM benefits because it claimed that it owed her $15,000, the difference between her damages of $40,000 and the $25,000 per-person limit of Howard’s AIG insurance policy, while Mildred insisted that Progressive owed her $32,500, the difference between her damages of $40,000 and the $7,500 she had actually received from the $50,000 settlement with AIG.
 

 To resolve the dispute, Progressive filed an action seeking a judgment declaring the amount of UIM benefits due Mildred under Jerry’s policy and the UM7UIM statute, Ala.Code 1975, § 32-7-23. Progressive paid into court the entire $32,500 at issue in the case. Mildred answered and filed a counterclaim, alleging bad faith failure to pay her UIM claim. Progressive filed a motion, pursuant to Rule 21, Ala. R. Civ. P., to sever the bad-faith claim from its declaratory-judgment action; the trial court ordered separate trials pursuant to Rule 42, Ala. R. Civ. P.
 

 Mildred moved for a summary judgment on Progressive’s declaratory-judgment action, arguing that she was entitled to the difference between her damages and the amount of the $50,000 per-oecurrence limit of Howard’s policy “available” to her after payment of the claims of the other occupants of the Kyle automobile, which, she contended, was the $7,500 she had received from the settlement with AIG. Progressive responded by arguing that its policy language provided that the $25,000 per-person policy limits of Howard’s policy be deducted from Mildred’s damages in order to determine its UIM liability. Progressive further argued that Mildred’s failure to inform it of the terms of the settlement and how the settlement proceeds were to be distributed to each occupant of the Kyle automobile violated her duty to inform under
 
 Lambert v. State Farm Mutual Automobile Insurance Co.,
 
 576 So.2d 160, 167 (Ala.1991), and, thus, that its duty to investigate the potential UIM claim and to determine whether to insist on or to waive its subrogation rights had never been triggered.
 

 At the summary-judgment hearing, Progressive and Mildred agreed that, at the least, Mildred was entitled to $15,000 in UIM benefits; the trial court entered an order effecting disbursement of that $15,000. The trial court further entered judgment in favor of Mildred for the remaining $17,500 in UIM benefits she claimed Progressive owed her. At Progressive’s request, the trial court made the summary judgment final, pursuant to Rule 54(b), Ala. R. Civ. P. Progressive appeals, arguing that Mildred was entitled to only $15,000 in UIM benefits because of the language in Jerry’s policy and because Mildred failed to properly notify it of the details of the proposed settlement and the intended distribution of the settlement proceeds as required, Progressive contends, under
 
 Lambert.
 

 We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3);
 
 see Lee v. City of
 
 Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ”
 
 Lee,
 
 592 So.2d at 1038 (footnote omitted). “[Sjubstantial evidence is evidence of such weight and quality that fair-
 
 *568
 
 minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989);
 
 see
 
 Ala.Code 1975, § 12-21-12(d).
 

 We will first consider Progressive’s second argument on appeal: that Mildred did not prove entitlement to $32,500 in UIM benefits because she failed to properly inform Progressive of the details of the settlement with AIG, or, more specifically, the intended distribution of the $50,000 among the five injured occupants of the Kyle automobile. Progressive bases its argument on the procedure set out by our Supreme Court in
 
 Lambert
 
 concerning a situation in which an insured attempts to settle a claim against an underinsured tortfeasor when a UIM claim is likely to be made by the injured insured:
 

 “(1) The insured, or the insured’s counsel, should give notice to the under-insured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured’s damages may exceed the tortfeasor’s limits of liability coverage.
 

 “(2) If the tort-feasor’s liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured’s claim against the tort-fea-sor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the un-derinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
 

 ' “(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor’s intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
 

 “(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured’s claim and to notify its insured of its proposed action.
 

 “(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tort-feasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tort-feasor’s insurer.
 

 “(6) If the underinsured motorist insurance carrier wants to protect its sub-rogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier’s insured, advance to its insured an amount equal to the tort-feasor’s settlement offer.”
 

 Lambert,
 
 576 So.2d at 167.
 

 Progressive argues that it was not given sufficient information to trigger its duty to investigate Mildred’s UIM claim and to
 
 *569
 
 determine whether to consent to the settlement and waive its subrogation rights. The
 
 Lambert
 
 guidelines indicate that the insured must inform the carrier of the “proposed settlement and the terms of any proposed release” and that the insured must notify the carrier if it intends to seek UIM benefits in addition to the settlement benefits.
 
 Id.
 
 This information triggers in the carrier the duty to investigate and to decide its position regarding the settlement and its subrogation rights.
 
 Id.
 

 The difficulty with Progressive’s argument in this case is that it did investigate the claim and it did specifically waive its subrogation rights in response to the information provided by Mildred as if its duty had, in fact, been triggered. The question becomes, then, whether it matters whether the information provided by the insured was in compliance with
 
 Lambert
 
 once consent is given after an investigation. We think not. Despite its current consternation over the division of the settlement proceeds between the five occupants of the Kyle automobile, Progressive’s claims adjuster never questioned Mildred about the division of the settlement proceeds during the investigation of the claim. Progressive claims that it would never have consented to the settlement and waived its subrogation rights had it known that the proceeds were to be disbursed, as it contends, “inequitably,” but Progressive knew the amount of the medical bills incurred by each occupant at the outset of its investigation and its failure to question the plan for dividing the settlement proceeds among the five injured occupants during that investigation should not now give rise to a right to withdraw the consent to settle that it freely gave in September 2007. Nothing in
 
 Lambert
 
 provides a method by which consent to settle, once given, may be withdrawn or declared invalid, and Progressive provides no other authority for this argument but
 
 Lambert.
 
 Progressive is not entitled to a reversal of the summary judgment in favor of Mildred on this basis.
 

 We turn now to Progressive’s argument that it was entitled to set off against Mildred’s actual damages of $40,000 the $25,000 per-person policy limit of Howard’s AIG policy to determine its liability for UIM benefits. Both parties admitted to the trial court that no Alabama case is directly on point in a situation such as this one, where multiple claims exhaust the per-occurrence limit of an underinsured motorist’s liability policy and a UIM claim is made by one of those multiple claimants. Progressive argues that its policy language governs the determination of its liability for UIM benefits, while Mildred argues that the language of Progressive’s policy is overly broad and therefore runs afoul of the language used in the UM/UIM statute, under which any terms in an insurance policy that conflict with it are considered void.
 
 State Farm Mut. Auto. Ins. Co. v. Scott,
 
 707 So.2d 238, 241-42 (Ala.Civ.App.1997).
 

 Section 32 — 7—23(b)(4) defines an under-insured motor vehicle as a motor vehicle “with respect to which: ... (4) The sum of the limits of liability under all bodily injury liability bonds and insurance policies available to an injured person after an accident is less than the damages which the injured person is legally entitled to recover.”
 
 See Scott,
 
 707 So.2d at 240-241 (explaining the creation of UIM coverage by the addition of subsection (b)(4) to the uninsured-motorist statute). Progressive’s policy, as quoted above, indicates that UIM benefits will be reduced by the difference between any amount paid by the insurer of the underinsured tortfeasor and the limits of liability of the underinsured tortfeasor’s policy. Progressive’s policy provision would not generally conflict with the UIM
 
 *570
 
 statute because “ § 32-7-23 does not mandate that an insurer ... pay any portion of its insured’s damages that fall within the
 
 available
 
 limits of another liability policy” and, typically, accepting less than the un-derinsured tortfeasor’s policy limits prevents an insured from seeking to make up the difference with UIM benefits.
 
 Scott,
 
 707 So.2d at 242. However, Mildred argues that Progressive’s application of its policy provision in this case by attempting to reduce the amount of her damages by the $25,000 per-person limit of Howard’s AIG policy violates § 32-7-23(b)(4) because the $25,000 per-person limit of Howard’s AIG policy was not available to her. The trial court agreed with Mildred, no1> tag at the summary-judgment hearing that the
 
 per-person
 
 limits of Howard’s policy should not be considered because the settlement of the multiple claims was based on the
 
 per-occurrence
 
 limit of the policy.
 

 On appeal, Progressive argues, based on
 
 Guess v. Allstate Insurance Co.,
 
 717 So.2d 389, 391 (Ala.Civ.App.1998), that its policy language should control the amount of the setoff to which it is entitled. In
 
 Guess,
 
 this court affirmed the reduction of an insured’s damages by the sums paid the insured under the tortfeasor’s policy, which also happened to be the limits of that policy, because the UIM policy provisions in the insured’s insurance policy provided for that setoff.
 
 Guess,
 
 717 So.2d at 391. The insured in
 
 Guess
 
 had argued that the language of § 32-7-23 did not provide for a setoff; however, after examining the language of the statute, this court determined that no language in § 32-7-23 precluded a setoff.
 
 Id.
 
 at 390. We then applied the provision of the insured’s policy regarding a setoff, which set off against the insured’s damages all sums paid by the owner or operator of the unta-sured/under-insured automobile.
 
 Id.
 
 Although
 
 Guess
 
 did hold that, because § 32-7-23 does not contain language prohibiting a setoff, UM/UIM policy provisions governing a setoff can be applied to determine the amount of a setoff due the UM/UIM insurer,
 
 Guess
 
 does not necessarily require a reversal of the summary judgment in favor of Mildred in the present case.
 

 Mildred argues that, because this case involves multiple claims against the uninsured tortfeasor’s per-occurrence policy limits, application of Progressive’s policy language contradicts the language of § 32-7 — 23(b)(4), which defines an underinsured motor vehicle.
 
 See Scott,
 
 707 So.2d at 240-41. Section 32-7-23(b)(4) bases the determination whether a tortfeasor-motorist is underinsured on whether the amount of coverage “available” to the injured person from the tortfeasor-motorist’s insurer is “less than the damages which the injured person is legally entitled to recover.” According to Mildred, because the $50,000 per-occurrence limit applied to the accident and because that amount was exhausted by the payments to the five injured occupants of the Kyle automobile, the amount available for her to recover could never be the $25,000 per-person limit of Howard’s policy and could only be the actual amount that she recovered from the settlement.
 

 Mildred contends that certain language in
 
 Scott
 
 supports her position that the amount “available” to her under Howard’s AIG policy was not the $25,000 per-person limit but was instead the actual amount of the settlement proceeds she received. In
 
 Scott,
 
 the insured, Scott, was injured in a one-car accident in which one of the three passengers in the automobile was killed.
 
 Scott,
 
 707 So.2d at 239. The driver of the automobile, who had been intoxicated at the time of the accident, had policy limits per accident of $300,000.
 
 Id.
 
 at 240 n. 1. However, the other passengers had settled their claims with the driver’s insurer be
 
 *571
 
 fore Scott, and the remaining amount of coverage was $97,500.
 
 Id.
 
 Scott settled her claims with the driver’s insurer for $77,500, which was $20,000 less than the remaining coverage under the driver’s policy.
 
 Id.
 
 at 240.
 

 Scott sought UIM coverage from her father’s insurer, State Farm, which argued that a provision in its policies required that all applicable liability policies be “used up by payments or judgments” before it became responsible for the payment of UIM benefits.
 
 Id.
 
 Because Scott had settled for $20,000 less than the remaining policy limits of the driver’s insurance, and thus the policy had not been “used up” or exhausted, State Farm argued that Scott was not entitled to any UIM benefits under the applicable UIM policies.
 
 Id.
 
 However, the trial court refused to enforce State Farm’s policy provision, and, after the jury returned a verdict establishing Scott’s total damages at $159,500, the trial court entered judgment against State Farm for $62,000, which it then reduced to $50,000 based on the limits of the applicable UIM policies.
 
 Id.
 
 State Farm appealed, and this court affirmed, holding the policy provision in State Farm’s policies void because it placed restrictions on UIM coverage that the statute did not and approving the trial court’s calculation of the UIM benefits due Scott based on the subtraction from her total damages award not of the amount of Scott’s settlement ($77,500) but the amount of remaining
 
 available
 
 coverage under the driver’s liability policy ($97,-500).
 
 Id.
 
 at 242 & 244.
 

 Based on
 
 Scott,
 
 Mildred argues that § 32-7-23(b)(4) requires a UIM insurer to pay an insured’s damages above and beyond the coverage
 
 available
 
 under a tort-feasor’s liability policy, regardless of the policy limits of the tortfeasor’s policy. Because the $50,000 per-oceurrence limit of Howard’s AIG policy was divided between the five injured occupants of the Kyle automobile, Mildred argues that the amount available to her was the amount of the settlement that she received: $7,500. Progressive complains that the settlement proceeds were divided inequitably; because Mildred incurred the most in medical expenses, says Progressive, she should have received a larger portion of the settlement and, in fact, should have received the per-person limit of $25,000.
 

 Progressive’s argument that it is entitled to set off the entire $25,000 per-person limit of Howard’s AIG policy against Mildred’s damages ignores the fact that the per-person limit could not have been awarded to Mildred. The parties agree that Mildred suffered $40,000 in damage as a result of the accident. Progressive settled UIM claims made by Jerry and Jennifer, at least implicitly agreeing that they had incurred damage in the amount of $16,000 and $21,500, respectively. Combined, and without considering Jace’s and Braswell’s damages, Jerry’s and Jennifer’s damages would have exceeded the other $25,000 in coverage available had Mildred been awarded the $25,000 per-person limit of Howard’s AIG policy. Thus, it is unreasonable for Progressive to argue that the per-person limit of $25,000 should have been awarded to Mildred, because that amount was not available to her. Progressive provides no authority for its contention otherwise.
 
 [1]
 

 
 *572
 
 We have concluded that Progressive’s decision to waive its subrogation rights in response to notice from Mildred regarding AIG’s settlement offer cannot now be set aside based on Progressive’s contention that the information provided it did not fully comply with
 
 Lambert.
 
 Thus, we have considered whether Progressive’s policy provisions governing a setoff required the $25,000 per-person limit of Howard’s AIG policy to be set off against Mildred’s $40,000 in damages. Because the application of Progressive’s policy provision in this case would result in a more restrictive definition of underinsured motor vehicle than that in § 32-7-23 by not considering the coverage
 
 available
 
 to Mildred, we cannot agree with Progressive that it was entitled to set off the $25,000 per-person policy limit of Howard’s AIG policy against Mildred’s $40,000 in damages as a result of the accident. Accordingly, we affirm the summary judgment in Mildred’s favor.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur in the result, without writings.
 

 [1]
 

 . Progressive argues, without citation to any binding or persuasive authority,
 
 see
 
 Rule 28(a)(10), Ala. R.App. P. (requiring that an appellant support his, her, or its argument with citations to relevant authority), that allowing the injured occupants of the Kyle automobile to determine how to divide the settlement proceeds among themselves permitted them to "maximize the amount of money going to the individuals who were injured the least and minimize the amount of money going to the individuals that were injured the
 
 *572
 
 most, thus attempting to maximize the most injured individual’s ability to obtain UIM coverage through Progressive.” Progressive
 
 then
 
 states that such "gamesmanship” is against public policy. Although we understand Progressive’s concern that a settlement encompassing multiple claims within the same family might encourage a distribution intent on maximizing UIM coverage,
 
 see Jones v. Automobile Club Inter-Insurance Exchange,
 
 26 Kan.App.2d 206, 209, 981 P.2d 767, 769-70 (1999) (indicating the possibility for collusion in a group settlement required remand for a factual determination of the actual damages of the multiple claimants), the resolution of such an argument must await another day. Progressive's only legally supported argument on appeal is that the $25,000 per-person limit should be set off against Mildred’s damages, and no authority Progressive relies upon supports that conclusion.