594 So.2d 37 (1991)
Paul ISLER
v.
FEDERATED GUARANTY MUTUAL INSURANCE COMPANY.
1900908.
Supreme Court of Alabama.
November 22, 1991.
Rehearing Denied February 21, 1992.
John E. Byrd of Byrd & Spencer, Dothan, for appellant.
William L. Lee III of Lee & McInish, Dothan, for appellee.
William L. Lee III, Alan C. Livingston, William C. Carn III, Peter A. McInish and Jerry M. White of Lee & McInish, Dothan, for appellee on rehearing.
MADDOX, Justice.
This case involves the "stacking" of uninsured motorist coverage, and the specific question presented is whether a person who is an insured under the underinsured motorist provisions of his company's "fleet" policy must exhaust the "stacked" coverages under that policy before he can claim entitlement to underinsured motorist benefits under his own personal automobile liability policy. This is the second time this case has been here.[1]
On October 9, 1985, Paul Isler was a passenger in a vehicle owned by his employer, Palmer Electric Company, which was insured under a policy issued by Reliance Insurance Company ("Reliance"). This vehicle collided with an automobile driven by John Boatwright; both Isler and Boatwright were injured.
Isler filed suit in the Circuit Court of Henry County against Boatwright,[2] Reliance *38 (the company's insurer), and Federated Guaranty Mutual Insurance Company, his own personal automobile liability insurance carrier. Both the Reliance policy and the Federated policy contained uninsured and underinsured motorist provisions. Isler alleged that Boatwright, the alleged tortfeasor, was an underinsured motorist, and that Isler was entitled to recover under the underinsured provisions of his company's policy and also under the provisions of his own automobile liability policy.
In his complaint, Isler demanded that Reliance and Federated "pay all sums which said plaintiff should be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motorist." (Emphasis added.)
On October 5, 1988, Isler executed a pro tanto release upon Reliance's payment to him of $35,000, and on November 29, 1988, he released Boatwright's estate and Boatwright's personal insurance carrier, State Farm Mutual Insurance Company upon its payment of $20,000. The claims against the released defendants were dismissed with prejudice, leaving only the action against Federated still pending.
Subsequently, Federated filed a motion for summary judgment, attaching the affidavit of Tanya Clemon, Reliance's claims representative, in which she stated, in substance, that Reliance's policy covered a fleet of vehicles and that the uninsured motorist coverage under the fleet policy was $20,000, and that Isler, by the "stacking" of three coverages as authorized by law, had available to him a total uninsured motorist coverage of $60,000. Federated argued that because Isler had settled with Reliance upon the payment to him of only $35,000, when he was legally entitled to recover a total of $60,000, that he did not exhaust Reliance's coverage. Federated argued that it was a secondary insurer and, therefore, was not obligated to pay on the policy. The trial court granted Federated's motion for summary judgment, and Isler appealed. This Court reversed, holding that "[t]he determination of which insurance coverage is primary and which, if any, is secondary is dependent upon the exact language of each policy." Isler v. Federated Guaranty Mut. Ins. Co., 567 So.2d 1264, 1265 (Ala.1990). On remand, Federated again filed a motion for summary judgment and introduced its policy in support of that motion. The policy contains the following language, which Federated contends entitled it to a summary judgment:
"20. Other Insurance.
"With respect to bodily injury to an Insured while occupying an automobile not owned by a Named Insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance."
Federated's argument is the same as that made on the first appeal: that because its insured was occupying an automobile not owned by him, Federated's obligation to pay uninsured motorist benefits is not quickened until its insured has exhausted all of the coverage that was available to him, and that its insured, although entitled to stack at least two additional coverages under the company's fleet policy, as provided for under the provisions of Ala.Code 1975, § 32-7-23(c),[3] nevertheless, settled with that insurer upon payment of $35,000, when he was entitled to at least $60,000.
It is not disputed that Palmer Electric Company, the company Isler worked for, had fleet coverage with Reliance on all its motorized vehicles. Uninsured motorist coverage under that policy, as mandated by *39 law, was $20,000 on each vehicle.[4]
In his complaint, Isler had asked for any amount that Reliance was "legally liable," to pay. Isler on this appeal, claims that Reliance was legally liable to pay only $20,000, because Isler had chosen not to stack the additional coverages, at least not to the extent of $60,000. He argues that Federated's interpretation of the provisions of his own personal automobile liability policy would require him to stack coverages.[5]
The Reliance policy, in its definition of "who is insured" with regard to the uninsured motorist coverage, reads as follows:
"D. WHO IS INSURED
"1. You or any family member.
"2. Anyone else occupying a covered auto or a temporary substitute auto...."
The Reliance policy covered all motorized vehicles owned by Palmer Electric Company, including any vehicles later acquired by Palmer. Isler was an employee occupying a covered automobile and was within the class of insureds allowed to stack coverages. Federated's policy stated that, "[w]ith respect to bodily injury to an Insured while occupying an automobile not owned by a Named Insured under this coverage," Federated was obligated to pay only the "excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance." After examining the provisions of the policy, we hold that Isler agreed to exhaust his primary coverage before seeking coverage under his Federated policy.
The clause we are dealing with is known by this Court as an "excess clause."
"The `excess clause' provides that the claimant's own policy applies `only in excess insurance over any other similar insurance available to such an insured [claimant] and applicable to such vehicle as primary insurance'that is, the uninsured motorist insurance which applies to the vehicle he is occupying is viewed as primary insurance...."
Gaught v. Evans, 361 So.2d 1027, 1029 (Ala.1978). The Court in Gaught found that an "excess clause" was valid and enforceable. Therefore, "secondary coverage may be reached after the exhaustion of primary coverage if the damages exceed the policy limits of the primary coverage". Gaught, 361 So.2d at 1030.
Reliance provided coverage to the vehicle in which Isler was a passenger; therefore, Reliance was the primary insurer. Federated's policy contains a valid excess clause. If the damages exceed the policy limits of the primary coverage, then Federated is liable to pay to Isler the amount of any excess.
Isler's possible recovery from Federated is limited to an amount in excess of what he is legally entitled to receive under the Reliance policy ($60,000) and from the tort-feasor's insurer ($20,000) or a total of $80,000. We can not discern from the record the amount of damages Isler suffered as a result of the accident, or whether any benefits would be available to Isler under the Federated policy as excess insurance; consequently, we must again reverse the trial *40 court's judgment and remand the cause to the trial court for further proceedings consistent with what we have said in this opinion regarding the legal rights of the parties.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
In its brief in support of its application for rehearing, Federated argues that in its original opinion this Court has changed the law set forth in Gaught v. Evans, 361 So.2d 1027 (Ala.1978), and Barnwell v. Allstate Ins. Co., 55 Ala.App. 447, 316 So.2d 696 (1975), by holding that if the plaintiff's total damages exceed the primary coverage available, the secondary insurer is liable for these excess damages. Federated is mistaken in arguing that we have changed the law.
Federated argues that it is not liable to Isler for any damages because Isler, by settling for $35,000, did not "exhaust" the limits of the primary insurer, which were $60,000. In support of this contention, Federated quotes from Barnwell, the following:
"The excess coverage of defendant was not available to plaintiff until the coverage of the primary policy was exhausted. Plaintiff, after suit against Fidelity [the primary insurer], chose to settle with and release from further liability the primary insurer. Such settlement was for less than the limits of coverage available. The policy was not exhausted. Benefits of defendant's policy were thus not available to plaintiff."
Barnwell, 55 Ala.App. at 450, 316 So.2d at 697-98. However, Federated fails to quote further from Barnwell where the opinion states: "As an excess carrier, defendant [the secondary insurer] would not be liable in any case unless plaintiff's damages were determined to be over $10,000.00 [the primary carrier's policy limit]." Id. (Emphasis added). The holding in this case is, therefore, consistent with the holding in Barnwell.
In this case, we held that Federated was not liable unless Isler's damages exceeded the policy limits of the other insurance. Isler had $20,000 available to him from the tort-feasor's insurer and $60,000 available to him from the primary insurer. This Court held that Federated is only liable to Isler for any amount of damages, within its policy limits, in excess of $80,000. This is the amount that Federated contracted to pay Isler. Federated's argument on its application for rehearing is the same argument brought to this Court's attention in its original brief; therefore, Federated has not introduced any new or meritorious material for this court to review.
OPINION EXTENDED; APPLICATION FOR REHEARING DENIED.
HORNSBY, C.J., and SHORES, KENNEDY and INGRAM, JJ., concur.
STEAGALL, J., dissents.
NOTES
[1] In Isler v. Federated Guaranty Mutual Ins. Co., 567 So.2d 1264 (Ala.1990), the same question of secondary coverage was presented. In that case, this Court did not reach the issue because Federated's policy was not included in the record on appeal. There, this Court held, as follows:

"Federated asserts that it has only a secondary obligation to Isler, which is activated only when Reliance's primary obligation is fully expended. The Federated policy is not in the record, however, so there is no basis on which to conclude that Federated's coverage is secondary to Reliance's. The determination of which insurance coverage is primary and which, if any, is secondary is dependent upon the exact language of each policy. See Gaught v. Evans, 361 So.2d 1027 (Ala.1978); Protective National Ins. Co. of Omaha v. Bell, 361 So.2d 1058 (Ala.1978)."
[2] Boatwright later died as a result of the injuries he received in the accident, and his estate was substituted as a party.
[3] Ala.Code 1975, § 32-7-23(c), provides, as follows:

"(c) The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract."
[4] The Reliance policy provided uninsured motorist coverage of only $10,000 per vehicle, but Ala.Code 1975, § 32-7-6, requires a minimum of $20,000 coverage on each vehicle. There is no dispute regarding the amount of mandated coverage. Reliance admitted that under the statute it was required to provide primary coverage of $20,000 per vehicle and that under § 32-7-23(c), it was legally liable for primary coverage plus two additional coverages, equalling available coverage of $60,000. Reliance, of course, obtained a pro tanto release upon payment of $35,000.
[5] Isler's argument is based upon his contention that the Reliance policy has a clause limiting recovery to the "limit of Uninsured Motorist Coverage Insurance shown in the declarations." His basic argument is that there is no law that mandates that a person "stack" coverages. He contends that stacking is optional. After the legislature adopted an amendment of § 32-7-23, on January 1, 1985, insurers can no longer prohibit the stacking of uninsured motorist coverage. See Lipscomb v. Reed, 514 So.2d 949 (Ala.1987). Therefore, any limiting clause in the Reliance policy that would prohibit stacking would be invalid.