Lula McDole, as conservator of the estate of George Johnson, appeals from the dismissal of her claims against Alfa Mutual Insurance Company ("Alfa"). We affirm.
 Background
On November 1, 1997, the vehicle George Johnson was driving collided with a truck being driven by Jimmy Brown, an employee of Builders Transport, Inc. Johnson was seriously injured as a result of the collision. Johnson alleged that Brown was responsible for the accident, and he sought to recover damages for his injuries from the liability insurer for Builders Transport.
At the time of the accident, Builders Transport was self-insured for the first $1 million of liability resulting from motor-vehicle accidents. After that amount was exhausted, Builders Transport had an annual aggregate deductible in the amount *Page 280 
of $1 million. This meant that Builders Transport was itself liable for the next $1 million of all claims entered against it on a nationwide basis in a given calendar year. After Builders Transport met this annual aggregate deductible, Reliance Insurance Company provided up to $1 million in excess coverage to Builders Transport. After the claims exhausted Reliance Insurance Company's $1 million excess coverage, Gulf Insurance Company provided another layer of excess coverage to Builders Transport in an amount up to $13 million. According to the trial court, the Gulf Insurance Company excess-coverage policy did not provide "drop down" coverage; this meant that Gulf Insurance's coverage would apply in this case only if Johnson's damages exceeded $3 million.
Johnson had two automobile-insurance policies with Alfa that were in effect on the date of the collision. Each policy included uninsured/underinsured-motorist coverage in the amount of $20,000.
Sometime in 1998,[1] Builders Transport filed a petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, seeking protection under Chapter 11 of the Bankruptcy Code. McDole and Johnson obtained relief from the automatic bankruptcy stay, and their claims against Builders Transport were allowed to proceed but only to the extent "coverage is available under any insurance policy issued to or covering the liability of [Builders Transport], provided, however, that McDole may not execute any judgment so obtained against any asset of [Builders Transport's] bankruptcy estates." (Order of the bankruptcy court, In re: Builders Transport,Inc., et al., No. A98-68798-JEM.)
In October 1999, Lula McDole, in her capacity as the conservator of Johnson's estate, and George Johnson, individually, sued Builders Transport and Alfa. McDole and Johnson (McDole and Johnson are hereinafter referred to collectively as "McDole")[2] alleged that Brown, while acting as an agent for Builders Transport, had negligently or wantonly operated a motor vehicle so as to cause Johnson's injuries. McDole also alleged that Builders Transport had negligently or wantonly entrusted its vehicle to Brown. Against Alfa, McDole alleged a bad-faith failure to pay uninsured-or underinsured-motorist benefits. Alfa filed a motion to dismiss the action as to it; in the motion Alfa admitted that the automobile-insurance policies it had issued to Johnson provided uninsured-and underinsured-motorist coverage, but it alleged that McDole's complaint failed to state a claim upon which relief could be granted and failed to state any set of existing facts under which Alfa could be liable to McDole for uninsured-or underinsured-motorist benefits.
In May 2001, the commissioner of insurance for the Commonwealth of Pennsylvania petitioned the Commonwealth Court of Pennsylvania to place Reliance Insurance Company into rehabilitation. The Pennsylvania *Page 281 
court granted this petition. The court subsequently declared Reliance to be insolvent and ordered the commissioner to liquidate Reliance's assets.
According to McDole's brief to this Court, a mediation session was held on June 28, 2002, to try to resolve the dispute between McDole and Builders Transport. Gulf Insurance Company, one of the insurers that provided excess coverage for Builders Transport, attended this mediation session. At the mediation session, McDole argued that the future costs to care for Johnson would be in the range of $2.5 million. McDole argued that Johnson's past, present, and future lost wages totaled $355,000 and that his medical bills totaled approximately $85,400.
As a result of the mediation, McDole and Builders Transport entered into a settlement agreement pursuant to which Builders Transport agreed to pay $750,000. Gulf Insurance Company provided the funds for this settlement. In its order approving the settlement, the trial court noted that the settlement agreement entered into by McDole and Builders Transport was limited to
 "[McDole's] release and discharge of the defendants named herein and the parties released in the separate Settlement Agreement and Release referenced above and that this settlement and Order shall in no way affect [McDole's] rights to proceed with any claims against Johnson's uninsured motorist carrier, Alfa Mutual Insurance Company, and/or Reliance Insurance Company, its predecessors or affiliated companies, and the South Carolina Guaranty Fund."
In August 2002, McDole filed a second amended complaint, asserting additional claims and/or clarifying the claims previously asserted against Alfa. She alleged that Alfa had breached the insurance contracts it had issued to Johnson by refusing to pay him uninsured-motorist benefits;[3] that Alfa was guilty of the tort of outrage; and that Alfa was guilty of bad faith in refusing to pay the uninsured-motorist claim. That same month, Alfa filed an action seeking a declaration of the rights and responsibilities of the parties under the automobile-insurance policies it had issued to Johnson. Alfa's declaratory-judgment action was consolidated with McDole's action.
Alfa again filed a motion to dismiss McDole's claims, arguing that McDole had failed to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala.R.Civ.P. The trial court granted Alfa's motion. McDole appeals; we affirm.
 Standard of Review
We apply the following standard of review to an appeal from a trial court's dismissal for failure to state a claim upon which relief could be granted:
 "On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala.R.Civ.P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in *Page 282 
support of the claim that would entitle the plaintiff to relief."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993).
 Discussion
If, under any set of facts, McDole can support her claims of breach of contract, the tort of outrage, or bad-faith refusal to pay uninsured-motorist benefits, the trial court erred in granting Alfa's motion and dismissing McDole's complaint. Thus, we must examine each of those claims separately.
 Breach-of-Contract Claim
In its order dismissing McDole's claims against Alfa, the trial court found that Alfa was not required to pay uninsured/underinsured-motorist benefits under the automobile-insurance policies issued to Johnson because Builders Transport was not uninsured or underinsured as those terms are defined in § 32-7-23, Ala. Code 1975. On appeal, McDole argues that she is entitled to recover the uninsured-motorist benefits under the Alfa insurance policies because, she argues, Builders Transport had no funds with which to pay its self-insurer's retention and deductible[4] and was therefore "uninsured" under the provisions of § 32-7-23, Ala. Code 1975, known as Alabama's Uninsured Motorist Statute. That statute provides, in pertinent part:
 "(b) The term `uninsured motor vehicle' shall include, but is not limited to, motor vehicles with respect to which:
 "(1) Neither the owner nor the operator carries bodily injury liability insurance;
 "(2) Any applicable policy limits for bodily injury are below the minimum required under Section 32-7-6;[5]
 "(3) The insurer becomes insolvent after the policy is issued so there is no insurance applicable to, or at the time of, the accident. . . ."
The record establishes that Builders Transport was self-insured at the time of the accident. Thus, Builders Transport carried its own bodily-injury liability insurance, and we cannot apply subsection (b)(1) to Builders Transport to define it as "uninsured."
Nor can we apply subsection (b)(2) of § 32-7-23 to Builders Transport. According to McDole, Builders Transport had agreed to pay up to the first $2 million in damages. Thus, according to McDole, the "policy limits" issued by Builders Transport — $2 million — clearly exceed the minimum policy limits required for bodily injury in § 32-7-6, Ala. Code 1975.[6]
Finally, we are unable to apply subsection (b)(3) of § 32-7-23 to find that Builders Transport was "uninsured" for purposes of Brown's November 1, 1997, accident with Johnson. McDole argues that because Builders Transport filed a petition in bankruptcy after the accident, Builders Transport has no funds with which to cover the damages McDole is claiming. However, the briefs McDole filed with this Court fail to mention the fact that Gulf Insurance Company, another excess-insurance carrier for Builders Transport, paid funds on behalf of Builders Transport to settle all claims McDole asserted against Builders Transport as a result of Brown's accident with Johnson. *Page 283 
Although the amount she received as a result of the settlement may not have been the full amount McDole believed Builders Transport was liable for, McDole voluntarily entered into the settlement agreement and accepted the amount agreed upon.
We find this situation to be similar to the one presented in Knowlesv. State Farm Mutual Automobile Insurance Co., 781 So.2d 211 (Ala. 2000). In that case, Knowles was injured during a hayride being held at Woodmen of the World Lodge #3854. Joseph Dodd was driving the truck in which Knowles was riding when he was injured. As a result of his injuries, Knowles sued Woodmen of the World Life Insurance Society ("Woodmen") and Dodd, as an agent of Woodmen. Knowles also sued his own automobile liability insurer, seeking uninsured-and underinsured-motorist coverage.
Because Dodd was a volunteer for a nonprofit organization, the trial court entered a summary judgment for him pursuant to the Alabama Volunteer Service Act, § 6-5-336, Ala. Code 1975. Knowles and Woodmen subsequently agreed to mediate, and during the mediation Knowles agreed to a full settlement of his claims against Woodmen in exchange for $32,500.
State Farm, Knowles's own liability insurer, moved for a summary judgment, arguing that Knowles was not entitled to uninsured-or underinsured-motorist benefits from State Farm because Knowles had accepted a settlement of insurance proceeds from Woodmen's insurance carrier in the amount of $32,500 on a policy with a liability limit of $1 million. State Farm asserted that Knowles's settlement established (1) that Dodd was not an "uninsured motorist"; (2) that Knowles had not established that his damages exceeded the $1 million limit of liability provided by Woodmen's insurance carrier, which was required in order to recover underinsured-motorist benefits; and (3) that Knowles had not exhausted Woodmen's insurance policy limits and was therefore not entitled to underinsured-motorist benefits. The trial court agreed and entered a summary judgment for State Farm.
On appeal, the Alabama Supreme Court stated:
 "Knowles accepted a $32,500 pro tanto settlement from Woodmen of the World, which was insured for $1 million by Scottsdale Insurance Company. State Farm argues that by accepting that amount in settlement and by consenting to the entry of a summary judgment for Dodd on the basis of the Volunteer Service Act, Knowles necessarily agreed that there was a respondeat superior relationship between Dodd and Woodmen. Knowles argues that he is entitled to uninsured-motorist benefits under his State Farm policy because, given the application of the Volunteer Service Act, he cannot recover damages from Dodd. The fact that Knowles could not recover damages from Dodd, because of the application of the Volunteer Service Act, would, standing alone, suggest that he might be entitled to benefits under the uninsured-motorist provisions of the State Farm policy. However, we have before us the additional fact that Knowles settled his claim against Woodmen for $32,500. It follows that if Dodd was an agent of Woodmen, and Knowles accepted $32,500 from Woodmen's liability-insurance carrier, $32,500 out of $1 million in available insurance proceeds, then State Farm would have had no obligation to pay uninsured-or underinsured-motorist benefits. Isler v. Federated Guar. Mut. Ins. Co., 594 So.2d 37, 39-40 (Ala. 1991)."
Knowles, 781 So.2d at 214 (some citations omitted). *Page 284 
As in Knowles, it follows that if Brown was acting as an agent of Builders Transport, and McDole accepted $750,000 from Builders Transport's liability insurer, then neither Brown nor Builders Transport was uninsured for purposes of the November 1, 1997, accident. McDole cannot recover $750,000 in liability damages from one of Builders Transport's insurers and, at the same time, claim that Builders Transport's bankruptcy resulted in no insurance proceeds being available to McDole. Builders Transport's bankruptcy might have resulted in a reduced recovery for McDole, but it did not result in the complete unavailability of insurance proceeds. Therefore, we cannot say that Builders Transport's bankruptcy proceeding resulted in there being "no
insurance applicable to, or at the time of, the accident." §32-7-23(b)(3), Ala. Code 1975 (emphasis added).
Accordingly, under the specific facts of this case, the vehicle owned by and insured by Builders Transport was not an "uninsured motor vehicle" within the meaning of § 32-7-23(b)(3), Ala. Code 1975, and Builders Transport was not "uninsured." Because McDole received $750,000 from Builders Transport's insurer as damages for the injuries Johnson sustained in the November 1, 1997, accident, McDole cannot establish that Builders Transport was uninsured for purposes of that accident. Therefore, McDole cannot establish that she is entitled to uninsured-motorist benefits under the policies issued by Alfa, and McDole cannot establish that Alfa breached the contract of insurance by denying McDole's claim for uninsured-motorist benefits. Alfa's motion to dismiss was properly granted as to McDole's breach-of-contract claim.
 Tort-of-Outrage Claim
In American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980), this Court recognized that
 "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress . . . must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
In Wal-Mart Stores, Inc. v. Smitherman, [Ms. 1000684, May 2, 2003]872 So.2d 833 (Ala. 2003), this Court held that the plaintiff's tort-of-outrage claim had been improperly submitted to the jury because the defendant in that case had acted within its right and the defendant's actions had not been accompanied with the "sound of fury." Id. at 840 (quoting Harrell v. Reynolds Metals Co., 495 So.2d 1381, 1387 (Ala. 1986)).
As in Smitherman, the conduct alleged in this case does not even approximate the tort of outrage. In her second amended complaint, McDole alleged that Alfa's "steadfast refusal to pay the claimed [uninsured-motorist] benefits in light of all the evidence available to [Alfa] constituted outrageous, malicious, and oppressive conduct on the part of [Alfa] and exhibited wanton and reckless disregard to the probability of causing severe emotional distress to [McDole]." However, we have already concluded that McDole is not entitled to uninsured-motorist coverage under the automobile-insurance policies issued to Johnson by Alfa. Thus, we cannot describe Alfa's denial of McDole's claim for those benefits as outrageous or extreme. We *Page 285 
also note that McDole's complaint does not allege that Alfa took any malicious or oppressive actions in denying McDole's claim for benefits. We simply cannot find any allegations in McDole's complaint that would support her tort-of-outrage claim. As the Court noted in Smitherman:
 "'[I]t would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee at will. That is what the plaintiff is asking this Court to do, for the termination is not for a reason which contravenes public policy, and there is no evidence that the termination was accompanied with the sound of fury.'"
Smitherman, 872 So.2d at 840 (quoting Harrell v. Reynolds Metals Co., 495 So.2d at 1387). The same could be said of an insurer's merely denying a claim. Alfa acted within its rights; there is no evidence indicating that its denial of McDole's claim was accompanied with the "sound of fury." McDole's tort-of-outrage claim was properly dismissed.
 Bad-Faith-Failure-to-Pay Claim
McDole's complaint also alleges that Alfa acted in bad faith when it refused to pay McDole's claim for uninsured-motorist benefits. However, as we have already concluded, McDole's breach-of-contract claim fails as a matter of law. As a result, her claim alleging a bad-faith refusal to pay an insurance claim also fails as a matter of law. See National Sec.Fire Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982) (an essential element of a claim alleging a bad-faith refusal to pay is that the insurer has breached the insurance contract); and National Sav. LifeIns. Co. v. Dutton, 419 So.2d 1357, 1362 (Ala. 1982) (the proof offered by a plaintiff in a bad-faith-refusal-to-pay-an-insurance-claim action must include proof that the plaintiff is entitled to recover as a matter of law under the insurance contract). Accordingly, the trial court properly dismissed McDole's bad-faith-refusal-to-pay claim.
 Conclusion
Because as a result of the settlement agreement McDole recovered insurance benefits from Builders Transport, Builders Transport was not "uninsured" within the meaning of § 32-7-23, Ala. Code 1975. Because Builders Transport was not uninsured for purposes of the accident between Brown and Johnson on November 1, 1997, we see no possible way McDole could recover against Alfa on her breach-of-contract claim or her claim alleging bad-faith failure to pay uninsured-motorist benefits. We have also concluded that McDole cannot establish any set of facts that, even if true, state a cause of action for the tort of outrage under Alabama law. Therefore, the trial court correctly dismissed McDole's claims against Alfa; its judgment is affirmed.
AFFIRMED.
MOORE, C.J., and SEE and BROWN, JJ., concur.
HARWOOD, J., concurs in the result.
[1] The record does not indicate the exact date Builders Transport filed its petition in bankruptcy.
[2] McDole filed an amended complaint on July 22, 2002; the amended complaint stated:
 "Lula McDole has been duly appointed as conservator of George Johnson's estate. Accordingly, all claims in the case are merged in her representative capacity as conservator of his estate. Therefore, any claims for George Johnson individually are hereby voluntarily dismissed by the plaintiff, and the sole remaining plaintiff in this case is Lula McDole as conservator of the estate of George Johnson."
All of the substantive claims stated in the original complaint were incorporated by reference into the amended complaint.
[3] In this amended complaint, McDole sought only uninsured-motorist benefits; she did not seek underinsured-motorist benefits.
[4] As noted above, McDole does not assert a right tounderinsured-motorist benefits under the Alfa insurance policies; therefore, we need not address that issue.
[5] The policy limits effective June 1, 2000, can be found at §32-7-6.1, Ala. Code 1975.
[6] See note 5.